McCoy, Trustee, Appellant, vs. HOFF and another, Respondents.

*November 18—December 23, 1947.*

For the appellant the cause was submitted on the brief of *Hughes & Hughes* of New Richmond, attorneys, and *Lines, Spooner & Quarles* of Milwaukee of counsel.

For the respondents there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar*.

ROSENBERRY, C. J. The case can be best understood by stating the principal facts in chronological order.

June 21, 1925: Ralph W. McCoy died.

June 30, 1925: Will admitted to probate.

September 18, 1931: Final judgment entered assigning the estate to Ruth J. McCoy and the Bank of New Richmond, as trustees of the two trusts described in the will.

March 9, 1933: Bank of New Richmond was stabilized and thereafter a stock assessment was made against the stockholders of the bank.

December 12, 1936: An order was issued by the county court directing Ruth J. McCoy, as executrix, not as trustee, to execute a note to the trustees of the segregated assets of the Bank of New Richmond for the sum of $22,000 in payment of the stockholders' liability.

September 18, 1938: An order was issued authorizing Ruth J.
McCoy, as executrix, to turn over to the trustees of the
segregated assets of the bank securities of the value of
$18,500 in full payment of the note given by her as
executrix.

The securities were thereupon turned over by said Ruth J.
McCoy as per order.

Article VI of the will is as follows:

"I give and bequeath all of the capital stock of the bank
of New Richmond of which I shall die possessed, except the
shares hereinbefore disposed of, to my said wife, and the Bank
of New Richmond, as trustees, to hold the same in trust for the
uses and purposes, with the rights and powers and subject
to the conditions following and none other, to wit:

"(a) To collect the income thereof and to pay the same,
less the reasonable expenses of the trust, semiannually or
oftener, to my widow during her life or until the termination
of this trust as hereinafter provided, one half (½) to be ap-
plied to her support and maintenance and one half (½) to the
support, maintenance and education of my children during
their minority. . . .

"(b) To divide said trust into as many equal portions as
I shall leave sons me surviving, and on each son attaining
the age of twenty-five (25) years, if my widow shall have pre-
deceased him, or upon her death thereafter, to assign and
transfer to him his portion, or, if my widow shall then be
living, such portion shall be so assigned and transferred in
whole or in such parts and at such time or times during her life
as she may in writing direct, and upon the transfer of the
whole thereof, this trust as to such son's portion shall cease
and determine. . . ."

"(c)" Makes provision in the event that all of the sons
shall die before having attained the age of twenty-five years.
(not material.)

"(d)" Provides for appointment of trustee for sons under
twenty-five years of age in event of her dying before some
reach that age.

Article VII provides:

"I give, devise and bequeath all of the rest, residue and
remainder of my estate, of whatever kind or nature and where-

ever situated, to my said wife and to the Bank of New Richmond, as trustees, to hold the same in trust for the uses and purposes, with the rights and powers, and subject to the conditions following, and none other, to wit:

"(a) To sell and convert into personalty any real estate whenever such conversion shall in their judgment be wise.

"(b) To invest and reinvest the trust funds as they shall deem wise in interest-bearing trust securities, provided, however, that they may in their discretion continue to hold any securities of which I may die possessed, whether the same are lawful investments for trust funds or not, and that they may also in their discretion purchase and sell stock of the Bank of New Richmond, and they shall not be held responsible for any loss in connection with such investments except for breach of good faith.

"(c) To collect the income thereof and to pay the same semiannually or oftener to my widow during her life or until the termination of this trust as hereinafter provided, one half ($\frac{1}{2}$) to be applied to her support and maintenance and one half ($\frac{1}{2}$) to the support, maintenance and education of my children during their minority in such manner and amounts as she may deem fit. . . ." (Other matter not material here.)

"(d)" Not material.

"(e) On the assignment and transfer to any of my sons of his portion of the stock of the Bank of New Richmond under the provisions of the trust created in Article VI of this my will, or of any part thereof, if my widow shall sooner die, or if my widow be then living, then upon her death, to pay to such son a sum equal to the par value of the shares so assigned and transferred, and to pay to each of my surviving daughters, and to the children of any deceased daughter, *per stirpes,* a sum equal to the par value of the shares so assigned and transferred to said son, and a further sum equal to one half ($\frac{1}{2}$) of any amount in excess of par at which the shares so assigned and transferred shall have been appraised at my death. . . ." (Provision for payment before death of widow.)

There was a codicil to the will which is not material.

As ground of recovery the plaintiff alleges that the assignment and delivery of securities of the value of $18,500 to the trustees of the segregated assets of the Bank of New Richmond

was made by the plaintiff with the mistaken idea of the law and facts involved for the following reasons, viz.:

(a) That on September 18, 1931, the final judgment rendered in the matter of the will of said deceased, assigned to Trust A (Article VI) the bank stock in the Bank of New Richmond. That thereafter Trust A contained absolutely no other assets, other than such bank stock.

(b) That the securities used by the trustee to pay such stock liability were taken from Trust B (Article VII) and the stock assessment was in no manner a lien against the assets in Trust B.

(c) That the final judgment rendered in the will of said deceased on September 18, 1931, while it contained a provision for making assignment in accordance with the terms of the will, failed to specifically provide for the assignment of the bank stock in the Bank of New Richmond to the trustees under Trust A, and the residue in said estate to the trustees under Trust B. That the failure of such judgment to show such specific assignments was not caused by the neglect or carelessness of the plaintiff to this action.

It appears from the foregoing that the estate of the deceased was assigned by the final judgment to Ruth J. McCoy as trustee. The plaintiff contends that the will created two distinct trusts. It is considered that the will created but a single trust. No doubt for convenience in drafting, the bank stock was disposed of separately from the residue of the estate, but under the terms of the will the wife was to receive one half of the income from the bank stock as provided in Article VI, and under the provisions of Article VII the sons, when the bank stock was assigned to them, were to be paid a sum equal to the par value of the shares and in addition "a further sum equal to one half ($\frac{1}{2}$) of any amounts in excess of par at which the shares so assigned and transferred shall have been appraised at my death."

The inventory of the Ralph W. McCoy estate discloses the following appraisal: Two hundred twenty shares of Bank of New Richmond stock, appraised at $135 per share, $29,700; real estate, $15,000; notes, cash, etc., $9,000; personal belongings, $3,500; life insurance payable to the estate, $42,500.

At the time of the assessment of the bank stock of the New Richmond Bank the stock had been assigned to Ruth J. McCoy, as trustee, along with the residue of the estate, all of which was in her hands as trustee. The question then is as to what extent, if at all, was she liable as trustee for the assessment?

Sec. 221.42, Stats. 1943, provides, in part, as follows:

"But persons holding stock as executors, administrators, guardians or trustees, and persons holding stock as collateral security, shall not be personally liable as stockholders, but the assets or fund in their hands constituting the trust shall be liable to the same extent as the testator, intestate, ward or person interested in such trust fund would be, if living, or competent to act, and the persons pledging such stock shall be deemed the stockholder and liable under this section."

There can be no doubt that the trustee, having the bank stock in her possession as such and also having possession of the residue of the estate, became liable as trustee for the amount of the assessment not exceeding the value of the estate in her hands, and we see no escape from the conclusion that under the terms of the statute and the will it became her duty to discharge that liability. This she did by payment of $18,500.

The plaintiff attempts to escape liability on the ground that there were two separate trusts. There was only one estate and the entire estate went into the hands of Ruth J. McCoy as trustee. While the sons were to become the owners of the bank stock, all of the children, including the sons, became entitled to their proportionate share of the residue. There was but one trust and one trustee. Designating Article VI

of the will, which gave the bank stock to the sons, Trust A, and designating Article VII of the will, which gave the residue to the sons and daughters, Trust B, does not change the will.

If the will had provided that the sons should have been first given $25,000 and thereafter they with the other children should share in the residue of the estate, there could be no question but that there was a single trust. That the shares of stock in the bank were separately disposed of in a separate paragraph did not operate to create a separate trust.

It is considered that this case is ruled by *Banking Comm. v. Marquardt*, 218 Wis. 210, 260 N. W. 464. In that case August Marquardt by will created a trust in certain property and provided that the income of the trust estate should be paid to the testator's widow during her lifetime or until she should remarry. He was the owner at the time of his death of ten shares of bank stock. These were to be divided equally between his two sons. The bank failed. There was an assessment which remained unpaid. An action was brought by the banking commission against the trustees, Augusta Marquardt and C. B. Bird. At the time of the commencement of the action the widow was still alive and had not remarried. It was held that the shares of bank stock were part of the trust estate. The plaintiffs insisted that the property was segregated as to the rights of separate beneficiaries; that because the bank stock was designed ultimately to become the property of Leo and Erwin Marquardt the other nine children have no interest in, and can acquire no benefit from, this stock; that is why the widow is to have the income from the entire estate. It was held that the arrangement for the division after the termination of the trust estate did not create a specific trust in the bank stock or in any other property for any or either child. It was held that the trustee was liable and that the estate was liable for the assessment under the provisions of sec. 221.42, Stats.

In this case, while the sons were ultimately to become owners of the bank stock, it had not been assigned or transferred to them, and it was a part of the estate in the hands of the trustee, and the trustee was liable under sec. 221.42, Stats. The trial court correctly held that there was no mistake of law or fact.

*By the Court.*—The order of the circuit court is affirmed.